Mike Medich v. Paul Stippec and Katarine Stippec, His Wife, Appellants, and Josip Spoljaric and Eva Spoljaric, His Wife,

and

Charles Kuturovac v. Paul Stippec and Katarine Stippec, His Wife, Appellants, and Josip Spoljaric and Eva Spoljaric, His Wife.—73 S. W. (2d) 998.

Division One, July 17, 1934.

*Robert E. Hannegan, Gilbert Weiss* and *Herman D. Olian* for appellants.

*Geo. Eigel* and *Marvin E. Boisseau* for respondents.

HAYS, J.—This is a consolidated case involving the release of two deeds of trust in the nature of mortgages on certain property situate in St. Louis County. The two instruments were executed by the owner of the property, Josip Spoljaric, his wife joining therein; the one to the use of respondent Medich and the other to the use of respondent Kuturovac. Appellants Stippec were impleaded because of their present ownership of the property, derived from Spoljaric through mesne conveyance executed about the time said releases were entered of record. Separate suits were filed by respondents Medich and Kuturovac and these suits constitute the consolidated case. ▋ In the lower court the judgment was for the respondents, and the Stippecs have appealed. This court's appellate jurisdiction obtains by reason of the fact that title to real estate is involved. [Nettleton Bank v. Estate of McGaughey, 318 Mo. 948, l. c. 953-954, 2 S. W. (2d) 771.]

The causes were consolidated in the court *nisi* and are here, by stipulation, to be thus considered. The petition, or bill, in the one case is a replica of that in the other. Also the witnesses were the same in both cases, and the testimony of each witness, except that of the respective plaintiffs, is to be considered as given in both cases.

It was alleged in Medich's petition that his deed of trust was executed January 2, 1925, and secured a number of promissory notes aggregating $11,000, the largest and latest maturing of which was a note for $6250; that all the notes but this one had, at the time said releases were entered, been paid and this one reduced to $800 by payments made thereon. It was further charged that about September

1, 1927, said Josip Spoljaric and Paul Stippec conspired together to obtain possession of said deed of trust and notes for the fraudulent purpose of having said deed of trust released of record and clearing the title from the lien thereof; that in pursuance of said scheme Spoljaric falsely and fraudulently represented to Medich that Stippec wished to see the deeds and notes for the purpose of determining the amount of indebtedness due and unpaid thereon; that Medich turned the papers over to Spoljaric for that purpose and the latter delivered them to Stippec, that having thus obtained possession of the papers, Stippec, accompanied by Spoljaric, took them to the office of the recorder of deeds at Clayton and there, representing himself to be the real owner of the notes, released the deeds of trust on the margin of the record thereof, thus causing Medich's lien to be lost to him.

It appears from Kuturovac's petition that his deed of trust was executed January 12, 1925, and filed for record the same day, to secure note in the sum of $2200, upon which no payments had been made at the time the deed was released on the record.

In each of the cases the answer of the appellants was a general denial, and defendants Spoljaric made default.

By the decree of the trial court the respective releases were canceled and the liens thereof restored; Medich's lien for $800, with interest, and Kuturovac's for $2200 and interest.

Appellants assigned as error: "(I) The finding and decree and judgment was against the law; (II) the finding, decree and judgment of the court is against the weight of the evidence; (III) the finding, judgment and decree of the court is for the wrong party." On such assignments appellants' sole contention is that the respondents failed to prove conspiracy and that the final decree is against the weight of the evidence. The case is in equity and stands here for trial anew.

The testimony ranged far outside the narrow issues framed by the pleadings, but the outline which we shall give will be confined to pertinent facts.

It appears from Medich's testimony, given in his own behalf, that from the time of the execution of the papers, in regard to which he testified fully, they had, except for a brief period during which they were collaterated with the Lafayette-Southside Bank to secure his own note for $2000 given the bank, remained in his possession. That the Spoljaric notes, other than the one for $6250, had been paid off at that time, and that this note had then been reduced to $800 by partial payments; that in collaterating the note he did not endorse it; that on or about September 1, 1927, Spoljaric called on Medich and asked him to let him have the deed of trust and note, saying that he was going down to the bank and borrow the money to pay it off. Medich did not give him the note and deed on that occasion but turned the same over to him on the following day; he never saw them after-

ward, although he asked Spoljaric about the papers. Medich explained his so entrusting his papers to Spoljaric by saying that he and Spoljaric had been friends for many years.

Josip Spoljaric testified in behalf of the respondents. After testifying as to the execution of the notes and deed of trust and the reduction of Medich's debt to $800 and to his still owing the whole of Kuturovac's, he testified to his regaining possession of the papers from Medich and Kuturovac, to the making of the releases, and to his association and connection with Stippec therein. He further testified that he was then indebted to Stippec in the sum of about $2000 and that the latter was importuning him for the money. We now quote:

"I says, 'I got mortgage on the property; I can't get it.' He said, 'You can go up to the Gravois Bank, I sure need it.' I said, 'I can't get it; I got mortgage yet for $3000 on my property.' He says, 'I don't believe that you owe that large a deed of trust, you pay him so much on that.' . . . He said I can get about $5000 on my property and pay him off. 'On Gravois Bank maybe you can get it; I got pull, you come with me, we make it on the Gravois Bank.' He says, 'You got your notes?' I said, 'No, I ain't got the papers; I can't get them papers, I owe that amount to Mr. Medich. I going to get Mr. Medich and Mr. Kuturovac to go over there and we go in the bank.' He said, 'All right.' I go down with Mr. Medich and Mr. Kuturovac. Come back with papers from the bank. He said that I can get about $5000 at the bank and pay Mr. Stippec out and I owe the bank $5000. He told me to go and get the papers." The witness did so. He gave the papers to Stippec, and together they applied to the Gravois Bank for a loan to Spoljaric of $5000, Stippec, who submitted the papers to the bank did the talking. The bank declining to make the loan, they departed, Stippec putting the papers in his pocket, and saying he would consult his friend Budrovich. They went together the next day to the recorder's office at Clayton, taking along those of the Medich notes that had been paid and the largest Medich note which had been reduced to $800, and the Kuturovac note. Spoljaric's language again: "Them people there in the court (courthouse) turned two notes back; he said, 'That ain't signed, the note.'" They started to go to Stippec's store. Spoljaric states the conversation and actions that followed: "He (Stippec) said, ' "Well, me go to see Mr. Budrovich. You can pay those fellows.' But that $3000 what I owe he make himself that money, he tell me he going to pay them two fellows out. I said, 'All right. When I signed it (mortgage to be made to Stippec) you got to see Mr. Kuturovac and Mike Medich.' " They reached Stippec's store. There Stippec said, according to Spoljaric's version: " 'Budrovich promised it to me today.' He looked at the Medich note; he wrote on the back, sign it himself. The Kuturovac note—he tried

to give it to another man to sign. He (the other man) said, 'I won't sign it.' He turned it back. He (Stippec) said, 'Hell, you scared?' and turned it and signed it. . . . He signed two or three places. I don't know if he signed his name or not, I can't read it.'' Shortly thereafter Spoljaric and Stippec returned to the recorder's office, where the releases were made by Stippec as stated elsewhere and also stated by Spoljaric. Afterward, according to Spoljaric's version, he and his wife executed a deed of trust to the use of Stippec to secure a note of $6000. The consideration was the $2000 then owed to Stippec, the $800 due Medich, the $2200 due Kuturovac, and $1000 cash later to be paid Spoljaric, Stippec agreeing to pay the Medich and Kuturovac notes.

The witness admitted he had twice been convicted of violation of the Prohibition Law, suffering a fine on the first conviction and a fine and jail sentence on the second. The record shows that the Stippec deed of trust just noted above was foreclosed in 1927 by sale thereunder to Stippec's brother—inferably as a mere conduit of the title,—who shortly thereafter conveyed the property to respondent Stippec. Upon their discovery of the same and the change of possession thereafter, Medich and Kuturovac consulted counsel and instituted this suit. It appears in the record that Spoljaric could neither read nor write.

Respondent Charles Kuturovac testified in his own behalf and the following is the substance of his testimony: After testifying to the execution of his mortgage and note and to the fact that his note was never at any time endorsed by him he related the circumstance of Spoljaric's coming to him and asking for his papers thus: ''If I can let him have my papers, he was going to give me my money. He said that Paul Stippec wanted to have the papers himself. Mr. Spoljaric said he could not give them to him because we had all the papers and the mortgage on his property. Mr. Stippec said he did not believe him he owed me any money at all. He told him to come down and get those papers . . . he said he liked to have the papers to show Mr. Stippec he owed me the money; . . . that Stippec said to him to come and get the papers; . . . that Stippec wanted the papers to see if he (Spoljaric) really owed me the money.'' Kuturovac said also that Stippec had paid him nothing on the Spoljaric note. Spoljaric and Kuturovac, so the latter said, were born and brought up in the same village. Elsewhere it appears in the record that all the parties as well as Budrovich mentioned, were of the same nationality, Croatians.

A. E. F. Wohlschlager, deputy recorder of deeds, testified in behalf of respondents. He identified the record of the deeds of trust in suit and the marginal releases made thereon. He stated that a person representing himself as Paul Stippec appeared before him on September 1, 1927, and signed the marginal releases as assignee

of the *cestuis que trust,* and the witness attested the same in his official capacity and attested the cancellation of the notes secured by the deeds of trust. The records themselves were received in evidence in connection with his testimony.

Appellant Paul Stippec testified in his own behalf. For some years he had conducted a store at Lakewood, St. Louis County, for the sale of meats and groceries at retail. He had known Spoljaric some nine years and for several years had furnished him with meats, groceries and money; that along about September 1, 1927, the date of the releases, Spoljaric owed him on account $5,400; that on that date they had a settlement in which Spoljaric executed his note for $6400, to cover said debt and $1000 cash, and a deed of trust on said property to Stippec to secure the note. This deed of trust was foreclosed by sale in November, 1927, and Stippec acquired title from the purchaser as already stated; that the settlement was made from Stippec's book account of which Spoljaric had a copy. It seems that these were small books that showed only the items of account for the current month and the balance of the preceding account carried over. They were not produced at the trial. Spoljaric after executing the papers last referred to above threw his book away as being of no further use.

Stippec testified that he went with Spoljaric to the Gravois Bank, saw the latter hand the papers to the cashier; that he at no time that day had the papers in his own hands, did not himself nor did any one for him ever endorse the name of Medich or the name of Kuturovac on any of the notes. When they reached Clayton that day "Mr. Spoljaric bring everything in his pocket. I never know what he bring. . . . I haven't got the deed of trust and notes; I never saw it before. Spoljaric bring it and go up to the clerk, or whoever that is down there. I seen the notes when the clerk have them in his hand and stamped them, and the clerk wanted me to sign the book. I didn't never look at them; the clerk looked them over." He admitted that the signatures on the record book were his own. "Two times I sign it" he said. He denied that he ever endorsed the name of Medich or of Kuturovac on the notes.

He further testified that on leaving the courthouse Spoljaric put the notes in his pocket and that he, Stippec, had never seen them since. He said the Gravois Bank declined to loan Spoljaric more than $2000 on his property, but the latter did not want to take less than $4000 or $5000. He also said that Spoljaric could not read.

Vincent Budrovich, introduced by appellants, testified in substance: He conducted a real estate business at 2322 South Twelfth Street in St. Louis. Was present when, in Stippec's store, the settlement referred to above was made and later he drew the notes and deed of trust, dated September, 1927, for Stippec and Spoljaric. Both Stippec and Spoljaric asked him to release the two deeds of trust

·standing of record, but he declined to do so. This request, he first said, was made of him at the time of the settlement referred to, and "they had the notes right there." Later on he placed the time as being the date of the acknowledgment of the Stippec deed of trust.

On redirect examination Spoljaric testified that he did not know that he was executing a note and deed of trust for $6400 but understood it was for $6000. In this he was corroborated by his wife. It also appeared from his further cross-examination that in April, 1928, Spoljaric with Stippec as surety borrowed $450 from the Gravois Bank for the ostensible purpose of paying interest on the Medich and Kuturovac notes and to supply some needs of his own.

█ Appellants contend that in order to establish a conspiracy respondents must show there was concerted action by two or more defendants knowingly to defraud and injure respondents; that there was a failure of proof of conspiracy, and that such failure rendered the decree nugatory.

Assuming for the discussion of this contention, but not deciding, that conspiracy was not proved, we think that failure to prove it would not, of itself, bar respondents' recovery. It is the generally recognized rule that if a plaintiff fails in the proof of conspiracy or concerted design, he may yet recover damages against one or more of defendants shown to be guilty of the wrong without such agreement. In such case the charge of conspiracy may be considered mere surplusage, not necessary to be proved to support the action, and proof of the conspiracy is of value chiefly in permitting plaintiffs to hold one party responsible for the acts of another: [12 C. J., p. 584, sec. 104.] For the gist of the action is unlawful injury and not conspiracy. [12 C. J., p. 581, sec. 100; Hunt v. Simonds, 19 Mo. 583; Darrow v. Briggs, 261 Mo. 244, 169 S. W. 118.]

█ So, on the record before us, the question of proof of the conspiracy is of no importance, so far as a recovery is concerned. The unauthorized, and therefore unlawful, releases were made by Stippec, as the evidence very clearly shows, who signed them as "assignee of the *cestuis que trust*." He released the lien thereof and supplanted them with his own. He is therefore guilty of an actionable wrong resulting in injury to respondents. Spoljaric intentionally co-operated with him therein and is equally guilty of the wrong. They are jointly and severally liable therefor, irrespective of whether they conspired together beforehand to perpetrate the fraud on the respondents. Recovery may be had against either or both, and neither has any just concern in respect of the conspiracy charged.

█ Nevertheless, since conspiracy to defraud was charged and the contention stated is made thereon, it may be considered briefly. "It is essential to a conspiracy to defraud that there be some designed and positively fraudulent artifice employed, or that a fraudulent intent should exist on the part of the party sought to be held,

and that such a fraud or artifice should be practiced on the party defrauded." [12 C. J., p. 586, sec. 107.] Conspiracy, like any other fact, may be proved by either direct or circumstantial evidence. [Dietrich v. Cape Brewing & Ice Co., 315 Mo. 507, 286 S. W. 38.] It may be inferred from proof of concerted action by those alleged to be in it. [Burton v. Maupin (Mo. App.), 281 S. W. 83.]

In view of our rather full statement of the facts a detailed analysis of them here is unnecessary. It appears from the testimony of Spoljaric and by inference from subsequent actions that there was a designed and fraudulent artifice, designed and employed by him and Stippec, and that fraud was practiced on the respondents to their injury by the concerted action of Stippec and Spoljaric. So, the essential elements of conspiracy were shown. The unauthorized, and therefore unlawful, releases were in fact made by Stippec, who signed the margin of the record of each deed as "assignee of the cestuis que trust." Spoljaric co-operated in the acts and shared the fraudulent intent with which they were done. By the greater weight of the evidence it was shown that Stippec endorsed on the notes the names of the payees with the same intent, Spoljaric acquiescing therein.

In the argument only, and not in the points or assignment of errors in the brief, it is asserted, without citation of any authority, that the decree should not stand as to Stippec's wife. We see no valid reason, and none is suggested, why her rights should be any greater than her husband's to hold onto his ill-gotten gains.

We concur in the findings of the circuit court and affirm the judgment. All concur.