Louise B. GRUENEWAELDER, now known as Louise B. Howe, Appellant,

v.

Ewald L. WINTERMANN et al., Respondents.

No. 48934.

Supreme Court of Missouri, Division No. 1.

Sept. 10, 1962.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 8, 1962.

Robert Kratky, James B. Herd, St. Louis, for appellant.

Biggs, Hensley, Curtis & Biggs, Ward Fickie, William C. Dale, Jr., St. Louis, for respondent, Security-Mut. Bank and Trust Co.

Bryan, Cave, McPheeters & McRoberts, R. H. McRoberts, R. H. McRoberts, Jr., St. Louis, for respondents, Ewald L. Wintermann and Edmee Wintermann.

DALTON, Judge.

On November 25, 1957, plaintiff, Louise B. Gruenewaelder, instituted this action in the Circuit Court of the City of St. Louis, to recover $150,000 actual damages and $150,000 punitive damages from Ewald L. Wintermann, Edmee Wintermann, and the Security Mutual Bank and Trust Company, a corporation of St. Louis, Missouri (formerly known as the Mutual Bank and Trust Company), on the theory that defendants had entered into a conspiracy to defraud her

of certain mining property located in the State of North Carolina and had so defrauded her.

When the pleadings were completed, the defendants filed a joint motion for summary judgment and offered evidence in support of it in accordance with the provisions of Supreme Court Rule 74.04(e), V.A.M.R. The joint motion was sustained by the trial court and plaintiff's petition was dismissed with prejudice. Plaintiff has appealed.

Under Supreme Court Rule 82.12, the parties have stipulated that the appellate transcript shall consist only of the pleadings, affidavits and exhibits necessary to the trial court's determination of defendants' joint motion for summary judgment. Supreme Court Rule 74.04, with reference to summary judgments, in part, provides: "(c) * * * Judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. * * * (h) In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

Defendants' joint motion for summary judgment was based on the theory that plaintiff's action was barred by the five-year statute of limitations, to wit, Section 516.120 RSMo 1959, V.A.M.S., and the court so held. That section, in part, provides: "Within five years: * * * (5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

Appellant insists that "the pleadings, exhibits, and memoranda before the trial court failed to show by unassailable proof that the appellant knew of the respondents' conspiracy or of the acts of the conspirators

in furtherance of the conspiracy" for more than five years preceding the filing of her petition; and that respondents' affirmative defense of the statute of limitations presented a jury issue. Appellant says that defendants have not sustained the burden of proof required under Rule 74.04 because the issues presented "may not be conclusively determined by an examination of the pleadings, exhibits, and memoranda submitted by the respondents"; and that "any doubt as to the existence of an issue of fact for a jury's determination necessarily precludes a finding in favor of movants." Appellant also contends that respondents failed to show by unassailable proof that the last item of damage sustained by the appellant pursuant to the conspiracy of the respondents was sustained at a time more remote than the five-year statutory period governing actions for conspiracy to defraud. Appellant relies upon Section 516.-100 RSMo 1959, V.A.M.S., which provides that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Plaintiff's petition, filed November 25, 1957, alleged that she had been the owner of a mineral lease on a tract of mineral-bearing land in North Carolina; that in 1946 she conveyed to Ewald L. Wintermann a ⅜ interest in said mineral lease in consideration of funds advanced by him as a co-adventurer; that she subsequently acquired title to the mentioned real estate; that in purchasing the property she had incurred a mortgage debt in an approximate amount of $30,500, which she was financially unable to liquidate; that, thereafter, Ewald L. Wintermann and his wife, Edmee Wintermann, aided and abetted by Edward C. Schmidt, who was acting as President of the Mutual Bank and Trust Company, fraudulently and by scheme and device per-petrated acts whereby the Wintermanns obtained title to said land and totally excluded plaintiff from the ownership thereof; that prior to January 30, 1951, plaintiff had a possible buyer for a part of her land for $125,000 "which would have enabled her to adjust and satisfy the existing indebtedness owed by her for the balance of the purchase price paid for the aforesaid tract of land and provide her, in addition thereto, funds for developing said property"; that Ewald L. Wintermann, "who was then participating with her as co-adventurer," opposed the sale (and apparently refused to release or sell his ⅜ interest in the mineral lease) and told her that, if she would convey a half interest in the land to him, he would, because of his influence, be able to negotiate a loan of $65,000 from the respondent bank; that with the money so obtained she could pay off the balance of the purchase price of the land in question; "that pursuant to the trust invested with the defendant, Ewald L. Wintermann, by virtue of the co-interest they had in said property" (and because he told her that he would pay her $5,000 for a half interest in the mentioned land and that they would then be able to obtain a joint loan of $65,000 from the respondent bank in return for notes and a deed of trust on the property, and that the proceeds of such loan could be used to satisfy her $28,000 purchase mortgage debt and interest and have the balance for their further joint use), she accepted the proposal and conveyed a half interest in the property to Wintermann. She further alleged that she was told by said Schmidt that the bank was making *a joint loan to her and her husband and to both of the Wintermanns* and that it would be a twelve-month loan.

Plaintiff alleged that, on January 30, 1951, the Wintermanns and said Schmidt, who was then acting for defendant bank, "induced and persuaded plaintiff and her then living husband to execute" a note for $65,-000, with 11 interest notes, and to secure said purported loan by a deed of trust on the North Carolina property; and that these notes and the deed of trust were also signed

by the Wintermanns to whom plaintiff had deeded a one-half interest in the mentioned property; however, plaintiff also alleged that she "believed she was obtaining" the loan.

Plaintiff further alleged that Ewald L. Wintermann and *Edward C. Schmidt* then and there stated and represented to plaintiff that by the execution of said notes and deed of trust plaintiff would receive $5,000 as "the proceeds from a check of that amount" from Ewald L. Wintermann "as additional payment to her to the moneys previously advanced to her for signing said deed of conveyance to defendant, Ewald L. Wintermann, of said undivided one-half interest in and to said real property situated in Buncombe County, North Carolina; and that, after payment of the mortgage debt from the proceeds of said loan, the balance of said funds derived from said loan of Sixty Five Thousand Dollars ($65,000.-00) would be deposited in a joint account which plaintiff and defendant, Ewald L. Wintermann, maintained with the defendant, Mutual Bank and Trust Company."

Plaintiff further alleged that defendant bank did not make a joint loan to her and the Wintermanns, as represented to plaintiff, but instead secretly made a $65,000 loan to Ewald L. Wintermann personally, at which time he executed his own individual note for $65,000 dated January 30, 1951, and due in four months; that the defendant bank "never did make a joint loan in the sum of Sixty Five Thousand Dollars ($65,000.00) to plaintiff and defendants, Ewald L. Wintermann and Edmee Wintermann, but in truth and fact made said loan to Ewald L. Wintermann only, and delivered the proceeds of said loan to Ewald L. Wintermann only, and delivered the proceeds of said loan on his own individual promissory note to the said defendant, Ewald L. Wintermann, without the knowledge and consent of plaintiff; *that said defendants, on the pretext of having made a joint loan to plaintiff and defendant, Ewald Wintermann,* as aforesaid, recorded and had recorded with the Register of Deeds of Bun-

combe County, North Carolina, the Deed of Trust executed on January 30, 1951, by plaintiff, * * * and thereby created a lien and encumbrance on plaintiff's said property in the sum of Sixty Five Thousand Dollars ($65,000.00)"; that said notes and deed of trust were "falsely and fraudulently obtained by defendants, Ewald L. Wintermann and Edmee Wintermann in order that, when the said loan of Sixty Five Thousand Dollars ($65,000.00) was made secretly and separately by defendant, Ewald L. Wintermann, such Deed of Trust could be, and which was, used by defendants and recorded as aforesaid as if a loan had actually been made to plaintiff and defendants, Ewald L. Wintermann and Edmee Wintermann; that defendants fraudulently and falsely concealed and covered up the fact that no loan was in truth and fact made to plaintiff and defendant, Ewald L. Wintermann jointly, which plaintiff believed at the time to have been done." (Italics ours.)

Plaintiff further alleged that Ewald L. Wintermann did not pay or intend to pay the said $5,000 and his check in that amount was not honored because of insufficient funds on deposit in said bank; that plaintiff executed the conveyance to the Wintermanns and the deed of trust to defendant bank on January 30, 1951 in reliance on the representations of said Schmidt and Ewald L. Wintermann and in ignorance of the fact that the deed of trust would be used in connection with the loan to Ewald L. Wintermann alone, instead of a joint loan to her and the Wintermanns as represented to her; that the representations of Schmidt and Ewald L. Wintermann were false and fraudulent, in that no joint loan was ever intended, but instead it was intended that the deed of trust would be turned over to the Wintermanns, so as to enable them to claim ownership of the notes and to foreclose said deed of trust, purchase the property and terminate plaintiff's ownership therein, as was done, and she was cheated and defrauded of her property.

Plaintiff also alleged that "defendant, Ewald Wintermann, as part of said fraudu-

lent scheme and plan did, prior to January 30, 1951, represent to plaintiff that although he was a person of considerable means and sufficient to meet the monetary needs for their joint adventure, that he could not liquidate his assets conveniently at the time * * *."

There is no contention here that plaintiff did not in her petition allege facts to support all of the nine essential elements of actionable fraud. See 37 C.J.S. Fraud § 3, p. 215.

The defendant bank, in its amended answer, admitted that on or about January 30, 1951, it made a loan of $65,000 to Ewald L. Wintermann on his promissory note secured by a deed of trust on the North Carolina property; that plaintiff and her husband also executed the notes and deed of trust with the Wintermanns, as alleged and that the deed of trust was recorded. It was also admitted that plaintiff had conveyed a half interest in the North Carolina property to Ewald L. Wintermann, and that Ewald L. Wintermann had foreclosed on the North Carolina property. All other allegations of the petition are denied.

As affirmative defenses, the bank stated that plaintiff and the Wintermanns had litigated the question in issue here in a lawsuit in North Carolina; that in a suit instituted by plaintiff for the cancellation of the notes and deed of trust and for actual and punitive damages and for injunctive relief against foreclosure, all had been denied and judgment had been entered against plaintiff; that the court had held the Wintermanns to be the owners and holders in due course of the notes and deed of trust executed by plaintiff; that defendant bank was not a party to the litigation; but the plaintiff's petition had charged that the bank had injured plaintiff by the transfer of the notes and deed of trust to the Wintermanns. The defendant bank further alleged that plaintiff had stipulated in the North Carolina proceeding that the deed of trust was valid and the Wintermanns could foreclose; that plaintiff was now estopped from asserting that such foreclosure was improper and fraudulent, since the judgment was res adjudicata. Defendant bank in its answer also alleged that plaintiff's alleged cause of action was barred by the statute of limitations, Section 516.120 RSMo 1959, V.A.M.S.

The Wintermanns filed a joint answer to plaintiff's petition admitting that plaintiff had conveyed to Ewald L. Wintermann a ⅜ interest in the mineral rights to the North Carolina property; that plaintiff had also conveyed a half interest in the North Carolina property to Ewald L. Wintermann; that Ewald L. Wintermann had executed the loan note mentioned in the petition; that plaintiff had executed the deed of trust on the North Carolina property; that such deed of trust had been recorded; and that Ewald L. Wintermann had foreclosed on the North Carolina property. All other allegations of the petition were denied. As an affirmative defense, the Wintermanns also alleged that the plaintiff's cause of action was barred by the statute of limitations, Section 516.120 RSMo V.A.M.S. The Wintermanns further pleaded the North Carolina judgment as res adjudicata and set up a counterclaim based upon said judgment, since in the North Carolina litigation, Ewald L. Wintermann had asserted a counterclaim against plaintiff and had recovered judgment thereon. The basis of his counterclaim in that action was that plaintiff had engaged in a series of misrepresentations to Wintermann regarding their business ventures, the respective worth of the mining property, its mineral content, the value of the timber and the nature of the mining operations being conducted there by plaintiff, as well as alleged misappropriations of business funds by plaintiff. In the trial of the present proceedings the Wintermann's counterclaim, based on the $70,080.-26 judgment of the North Carolina court against plaintiff, was *severed* from the present proceeding and a separate trial and judgment ordered thereon. Therefore, it is not involved in this appeal from the summary judgment as entered by the trial court

in this proceeding. Supreme Court Rule 82.06.

To Ewald L. Wintermann's counterclaim, the plaintiff filed a brief reply wherein she admitted that she had filed suit against the Wintermanns in North Carolina, as alleged in defendants' counterclaim, but she denied that her complaint in the North Carolina case set forth the same allegations as her petition herein, or that the same issues were tried and determined in that cause, and denied further that the North Carolina court had jurisdiction of the parties to said action, since Edmee Wintermann and defendant bank were not parties to said case. The remaining allegations of the counterclaim were *not* denied.

No new or amended reply was filed by plaintiff after the Wintermanns amended their answer and counterclaim in the court below, as hereinafter stated. The issues were submitted to the court on the basis of plaintiff's original reply of April 8, 1958, to the Wintermanns' original answer and counterclaim. Appellant's brief so concedes. The amendment added to the Wintermanns' answer included an allegation that, after all pleadings had been filed in the North Carolina suit, "the parties, Ewald L. Wintermann and Louise B. Gruenewaelder, agreed that defendant Ewald L. Wintermann was entitled to foreclose on said real estate and, by stipulation of the parties, the (temporary) restraining order hereinabove referred to was dissolved, and it was agreed by and between the parties that only the monetary demands of the parties would thereafter be in litigation; (and that) the real estate hereinabove referred to was in due course sold at foreclosure to defendant Ewald L. Wintermann."

In support of defendants' joint motion for summary judgment there was also filed with the trial court duly authenticated copies of all pleadings, judgments and orders entered by the Superior Court of Buncombe County, North Carolina in the judicial proceeding to which the defendants in the pending action had made reference in their answers and counterclaim. In the North Carolina court proceedings Mrs. Gruenewaelder and Ewald L. Wintermann had each claimed to have been defrauded by the other in connection with their joint adventures and, in particular, in connection with the loan and deed of trust transaction which is the subject of the present litigation. The allegations in plaintiff's petition, as filed in the North Carolina court on January 28, 1956, quite closely follow the essential allegations of fact in her petition filed in the Circuit Court in the City of St. Louis in this proceeding on November 25, 1957, concerning the acts and representations of the Wintermanns and the bank and of plaintiff's reliance thereon. As stated, the trial of the conflicting claims of the parties in the North Carolina court resulted in judgment for defendant Ewald L. Wintermann and against plaintiff on all issues and the trial court made specific findings of fact that appellant obtained money from Ewald L. Wintermann by fraud; that she had converted to her own use certain of Wintermann's moneys; that Wintermann was a holder in due course of the subject notes and deed of trust; and that Wintermann was entitled to recover from appellant the sum of $70,080.26. The judgment became final January 13, 1958.

The transcript of the proceedings in the North Carolina court further show that on or about December 20, 1955, defendant Wintermann arranged for the appointment of a substitute trustee in the mentioned deed of trust, dated January 30, 1951, and began publication of a notice for a foreclosure sale of the described property under the deed of trust on January 30, 1956; and that on January 28, 1956, plaintiff instituted her action in the North Carolina court against Wintermann and the substitute trustee, wherein she sought to restrain the defendants from conducting the foreclosure sale. She further sought to have the $65,000 note, interest notes and the deed of trust securing the same cancelled by order of the court or, in the alternative, that plaintiff be adjudged and declared "the beneficial owner of a one-half undivided interest in the obligation evidenced by said notes"; that the

deed of trust be adjudged to be fully satisfied and cancelled of record; that plaintiff recover of defendant Wintermann $5,000, with interest from January 30, 1951 until paid, and that she further recover $50,000 in punitive damages. The relief prayed by plaintiff was denied.

In further support of the motion for summary judgment, as provided in Supreme Court Rule 74.04, the defendants filed with the trial court affidavits of Messrs. Kroner and Dunne, officers of the Federal Reserve Bank of St. Louis. The affidavits and the incorporated memoranda show that plaintiff within a few months after the closing of the loan with the defendant bank had two conferences with the affiants, during which conferences the plaintiff complained at length concerning the loan transaction which is the subject of her present action. She requested their intervention in her behalf in their supervisory capacity over the defendant bank, a member of the Federal Reserve System. The details of those conferences and the various statements, complaints and allegations which plaintiff made during the conferences, are set forth at length in the memoranda prepared immediately after the conferences. Plaintiff filed no opposing affidavit. Supreme Court Rule 74.04(e).

Appellant in her own brief in this court has reviewed these affidavits and memoranda substantially as follows: Approximately two months after the date of the closing of the deed and loan transactions at the respondent bank, the appellant (accompanied by her daughter) contacted officials of the Federal Reserve Bank of St. Louis, informed them of the activities of the respondents, and requested their intervention in behalf of the appellant in their supervisory capacity over the respondent bank (which is a member of the Federal Reserve System). The first conference between the appellant and the Federal Reserve officers occurred in early April, 1951; a second conference took place during the following month. Subsequent to each conference, a Federal Reserve officer drafted an office memorandum reciting the substance of the respective conferences.

During the meetings, the appellant informed the officers of the Federal Reserve Bank that she had been in business with respondent Ewald L. Wintermann prior to January 30, 1951, and that their business sorely needed additional operating capital on January 30, 1951, with which to retire an existing note held by the respondent bank and a mortgage outstanding on the mining property in North Carolina.

According to the memoranda, the appellant related to the officers that the respondent Ewald L. Wintermann arranged a joint loan at the respondent bank through its president, Ed. Schmidt. As a portion of the loan transaction, the appellant and her husband were to deed a one-half interest in the fee simple to respondents Ewald L. and Edmee Wintermann, in consideration of the payment of $5,000 in addition to the funds previously advanced by respondent Ewald L. Wintermann.

The memoranda reflect that the appellant then revealed how respondent Ewald L. Wintermann obtained a deed for a one-half interest in the fee simple to respondents Ewald L. and Edmee Wintermann, in consideration of the payment of $5,000 in addition to the funds previously advanced by respondent Ewald L. Wintermann.

The memoranda reflect that the appellant then revealed how respondent Ewald L. Wintermann obtained the deed for a one-half interest in the property by exchanging a worthless check for the deed of the appellant and her husband. The appellant also related that she had never received a joint loan but that her North Carolina property had nevertheless been *unscrupulously* encumbered by a deed of trust given to secure a loan which, in fact, was made to respondent Ewald L. Wintermann individually.

Appellant further reviewed the said memoranda, as follows: "During the course of the conferences, the appellant complained of

the bank's *complicity* with the other respondents. According to the memoranda, the appellant informed the Federal Reserve officials that the respondent bank's executive officer, Ed. Schmidt, had: (1) *interfered* with sale and loan transactions favorable to the appellant; (2) *manipulated* the respondent bank into a dominant lending position in order that he might be able to demand such terms as he chose in the bank's dealings with the appellant; (3) *combined* with Ewald Wintermann to force the appellant to sell a half interest in the property; (4) agreed to lend $65,000 to the appellant and respondent Ewald L. Wintermann jointly, when, in truth, the funds were *secretly* deposited in respondent Ewald L. Wintermann's personal account; and (5) *required* the appellant and her husband to join in the execution of notes and a deed of trust on their North Carolina property when the loan actually made by the respondent bank was made to respondent Ewald L. Wintermann individually prior to the execution of the notes and deed of trust signed by the appellant and her husband." (Italics ours.)

We have also carefully reviewed the memoranda submitted concerning conferences between the plaintiff and the Federal Reserve Bank officers, and also a subsequent telephone conversation between her and a bank officer, when a report was made after a conference had been had with Mr. Schmidt with reference to plaintiff's complaints. It is clear from the memoranda submitted that plaintiff was represented by counsel at the time she executed the $65,000 note and deed of trust with the Wintermanns. Her counsel was a former President of the Missouri Bar and Mr. Wintermann was represented by Mr. Donnell, a son of a former Governor of the State. The memoranda clearly reflect the fact that plaintiff complained that she had been misled by statements of Mr. Schmidt and Mr. Wintermann; that she had deeded one-half interest in the North Carolina property to Mr. Wintermann and received a worthless $5,000 check in return; that she had been

told that a loan of $65,000 was to be made by the bank to her and Mr. Wintermann jointly and was to be secured by a deed of trust on the North Carolina property, whereas she then knew that it was not a joint loan but a loan to Mr. Wintermann alone; and that the deed of trust that she had given was to protect Mr. Wintermann and to secure Mr. Wintermann's loan. In her several conversations, as indicated by the memoranda, she expressed a lack of good faith on the part of Mr. Schmidt and Mr. Wintermann; believed there was an improper combination between the bank and Wintermann, and even suggested that she believed a conspiracy existed. She subsequently said she had taken her complaints up with her counsel; and that she was interested in a settlement of the matter.

A few quotations from the memoranda taken at the time will explain the matter further. One memorandum of an interview with Mrs. Gruenewaelder on April 4, 1951, recites that shortly after January 30, 1951, Mrs. Gruenewaelder complained that she had "made inquiry as to the proceeds of the loan and was informed by Mr. Schmidt that a loan to her was never considered by the bank, and that her execution of the security documents had been taken 'for the protection of Mr. Wintermann.' She was informed that none of the loan had been credited to the joint account but that the joint account current ($14,000) balance resulted in a transfer of credits from Mr. Wintermann's personal account. She also learned that a short time before a substantial credit had been made to Mr. Wintermann's account resulting from a loan secured by his individual property."

After reciting how the proceeds of the $65,000 loan were applied, to wit, $30,000 on a prior mortgage and interest; $20,000 on an old note and $14,000 [sic] placed in Mr. Wintermann's account, the memoranda proceeds: "Mrs. Gruenewaelder, however, is suspicious of the transactions in Mr. Wintermann's individual account, feeling that she had but secured a prior loan to Mr. Wintermann and received nothing, and is

also somewhat alarmed in that two of the interest notes, now overdue, have not been presented for payment. She feels that the bank has failed to deal with her in good faith, and that an improper combination exists between the bank and Mr. Wintermann to the detriment of her interests." Mrs. Gruenewaelder "stated that Mr. Schmidt told her his bank would not advance the $65,000 unless she deeded such property interest to Mr. Wintermann. Mrs. Gruenewaelder says that, at this point, she felt herself to be the victim of sharp practice, but that the need of funds was so urgent she was willing to accept the terms proposed. * * * Mrs. Gruenewaelder says the understanding was (and that Mr. Schmidt had said) that, in return for such notes and deed of trust, the bank would advance the $65,000 loan to Mr. Wintermann and herself jointly. However, (instead of to them) Mutual Bank and Trust Company in fact advanced the $65,000 to Mr. Wintermann personally and (according to Mrs. Gruenewaelder) actually had extended the loan prior to the closing on January 31. Mr. Wintermann (on about February 2) used approximately $30,500 of such proceeds to pay off the North Carolina creditors and used about $20,500 to retire the joint indebtedness with Mutual Bank and Trust Company. The remainder of the $65,000 (i. e. about $14,000) he deposited in the joint account of Mrs. Gruenewaelder and himself. The $5,000 check which he had given at the closing in return for her deed has never been paid * * *."

As stated, plaintiff filed no verified denial of the facts stated in the affidavits, exhibits and memoranda filed by defendants in support of their motion for summary judgment, and they stand admitted. She did not avail herself of the remedy provided by Supreme Court Rule 74.04(e), wherein it stated: "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule,

must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In sustaining defendants' joint motion for summary judgment on May 26, 1961, the court approved the allegations of the defendants' motion for summary judgment to the effect that in April and May of 1951 plaintiff had knowledge of all of the matters upon which she now bases her claim. At that time she made allegations substantially as stated in her present petition and reported the alleged fraudulent activities of defendants to the officials of the Federal Reserve Bank of St. Louis; that the affidavits of the officials to whom she complained show that plaintiff reported essentially all of the facts alleged in her present petition; and that it, therefore, conclusively appears that plaintiff then had knowledge of all of the circumstances and facts which she now claims to have been fraudulent, and her claimed cause of action was barred by the statute of limitations when she filed the present action on November 25, 1957. However, in reviewing the record in this case, the rule of deference to the findings of the trial court does not apply, since the record consists of the pleadings and documentary evidence. Kansas City Terminal Railway Co. v. Kansas City Transit, Inc., Mo.Sup., 359 S.W.2d 698.

In support of appellant's contention that the trial court erred in entering judgment for defendants the appellant insists that she "sought damages for the conspiracy of the respondents by which she was deprived of her mining property in North Carolina." She reviews the allegations of her petition and points out that she alleged that the defendants Wintermann "aided and abetted by one Edward C. Schmidt * * * fraudulently and by scheme and device perpetrated acts whereby the said defendants * * * obtained title to said tract of land to the total exclusion of plaintiff * * *." She then reviews the further allegations of her petition, as hereinbefore reviewed, and ar-

gues as follows: "The fraud which occurred in the respondent Bank on January 30, 1951 whereby respondent Ewald Wintermann obtained a half interest in the appellant's property is not the gravamen of her petition. The essence of the petition is the loss suffered by the appellant through the total deprivation of her ownership and proprietary interests in the mining property resulting from the respondents' foreclosure pursuant to the alleged conspiracy. The foreclosure, as alleged in the petition, was the culmination of a long series of subterfuges and misrepresentations initiated during the period of the closing transactions and systematically continued by the respondents in the later assignment of the notes by the respondent Bank to respondents Ewald and Edmee Wintermann. By alleging the fact of the respondents' combination to injure the appellant, the series of fraudulent misrepresentations and transactions of the conspirators, the unlawful end intended by the conspirators, and the damage suffered by the appellant, the petition fairly stated a cause of action for conspiracy to defraud." Appellant then says that respondents offered no evidence to rebut the allegations of her petition as to respondents' *conspiracy*.

Appellant further argues that "since conspiracy to defraud the plaintiff of her North Carolina property is the cause of action alleged in the appellant's petition, the respondents must show by unquestionable evidence that the appellant knew of the *conspiracy alleged or of the acts of the conspirators in furtherance of the conspiracy* at a time more than five years prior to the filing of her suit in the court below." (Italics ours.) Appellant argues that in her complaints to the Federal Reserve officers "there is no hint or suggestion that the appellant *then* had knowledge of facts or anticipated that the respondents were plotting ultimately to deprive her of her property"; and that there was "no reason why the appellant should have foreseen that possibility."

Appellant further argues that regardless of her report and complaints to the Federal

Reserve officers "there was absolutely nothing in the record before the trial court from which it could be inferred that the appellant had discovered the conspiracy of which she now complains"; or that appellant by that time had discovered the acts of the respondents essential to the *conspiracy*. Appellant also says that at the time of her conferences with the officers of the Federal Reserve Bank she did not know of the assignment of the notes and deed of trust to defendant Wintermann or that such deed of trust had been recorded; and that she made no complaints concerning these events, as they had not occurred at the time of the conferences, and appellant had no knowledge of them at that time. Appellant concludes this argument in support of her first assignment of error by saying that "the pleadings, exhibits and memoranda before the trial court failed to show by unassailable proof that the appellant knew of the respondents' *conspiracy* or *of the acts of the conspirators in furtherance of the conspiracy * * ** more than five years preceding the filing of her petition in the court below. * * *." (Italics ours.)

We think the foregoing argument of appellant clearly demonstrates a misunderstanding of the law applicable to her action as instituted in the trial court. In the first place, her action was clearly an action to recover actual and punitive damages on the ground of fraud. A careful reading of plaintiff's petition fails to sustain her contention that a *conspiracy* to defraud was alleged. In Rosen v. Alside, Inc., Mo.Sup., 248 S.W.2d 638, 643, the court said: "A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful. Shaltupsky v. Brown Shoe Co., 350 Mo. 831; 168 S.W.2d 1083; Seegers v. Marx & Haas Clothing Co., 334 Mo. 632, 66 S.W.2d 526. * * * The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff. Shaltupsky v. Brown Shoe Co., supra; Medich v.

Stippec, 335 Mo. 796, 73 S.W.2d 998; Seegers v. Marx & Haas Clothing Co., supra; Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570. * * * Conspiracy does not ordinarily give rise to a civil action unless something is done pursuant to it which, without the conspiracy, would create a right of action against the defendants severally. Shaltupsky v. Brown Shoe Co., supra." Also see Rippe v. Sutter, Mo.Sup., 292 S.W.2d 86, 89.

While plaintiff's petition covers ten pages of the transcript and a great many facts are alleged, the petition fails to allege an agreement or understanding or any planned cooperative action among the defendants to defraud the plaintiff; nor does the petition allege facts from which any such agreement or understanding between the defendant bank and the defendant Wintermanns can be inferred. There is further no allegation that the various alleged acts of the several defendants were made pursuant to any such agreement, understanding or common purpose and design. Such allegations are ordinarily essential to charge a conspiracy. Kansas City v. Rathford, supra; Shaltupsky v. Brown Shoe Co., supra; and Rippe v. Sutter, supra. The petition did allege that the defendant bank "aided and abetted" defendants Wintermann but such allegations of the independent action of the various defendants was insufficient to charge a conspiracy absent any allegation as to a common purpose, design or agreement to defraud plaintiff of the specific property.

However, "it is the generally recognized rule that if a plaintiff fails in the proof of conspiracy or concerted design, he may yet recover damages against one or more of defendants shown to be guilty of the wrong without such agreement. In such case the charge of conspiracy may be considered mere surplusage, not necessary to be proved to support the action, and proof of the conspiracy is of value chiefly in permitting plaintiffs to hold one party responsible for the acts of another, * * * for the gist of the action is unlawful injury and not

conspiracy." Medich v. Stippec, supra, 73 S.W.2d 998, 1001[3-4].

It is apparent that appellant's contention that the petition charges a conspiracy is inspired chiefly by the fact that the defendant bank and Mrs. Wintermann were not parties to the North Carolina litigation, and the issues decided there are not res adjudicata as to them; and that appellant seeks to hold them for the acts of Ewald L. Wintermann in the foreclosure and sale of the North Carolina property. She insists that the damage there sustained was the last item of damage, which damage was sustained subsequent to January 20, 1956, and within five years prior to the institution of her suit. In this manner she hopes (by Section 516.100) to toll the bar of limitation under Section 516.120 RSMo 1959, V.A.M.S.

However, we have heretofore noted that plaintiff's reply to the Wintermanns' amended answer and counterclaim, as the cause was submitted to the court on the motion for summary judgment, contained no denial of the allegations of the Wintermanns that after all pleadings had been filed in the North Carolina suit "the parties, Ewald L. Wintermann and Louise B. Gruenewaelder, agreed that defendant Ewald L. Wintermann *was entitled to foreclose on said real estate* and, by stipulation of the parties, the (temporary) restraining order hereinabove referred to was dissolved, and it was agreed by and between the parties that only the monetary demands of the parties would thereafter be in litigation." (Italics ours.) Nor was there any denial of the Wintermanns' allegation that the mentioned real estate in North Carolina was "in due course sold at foreclosure to defendant Ewald L. Wintermann." See Brown & Pounds v. South Joplin Lead & Zinc Mining Co., 231 Mo. 166, 132 S.W. 693, 694.

While the petition, as stated, fails to allege a *conspiracy* we do not find that fact to be an essential and decisive factor under the record presented in this case, because the plaintiff in her complaints to and in her conversations with the several officers of the

Federal Reserve Bank clearly demonstrated that plaintiff at that time well knew of the fraud, if any, practiced upon her. She knew the facts and had drawn her own conclusions from the known facts. These conclusions were that she had been the victim of sharp practices; that there was a lack of good faith on Wintermann's part in refusing to obtain new funds, except from the defendant bank; that she had been deceived and defrauded by obtaining only a $5,000 worthless check for a one-half interest in her property; that she had been pressured and unfairly dealt with because of her urgency to refinance her indebtedness and to also obtain additional funds; that the representations that a $65,000 loan was to be made by the bank to her and Wintermann jointly was false, since she then knew that it was not a joint loan but a loan to Wintermann alone and her deed of trust had been given to protect Wintermann and to secure Wintermann's loan. Her final conclusion was that an improper combination and conspiracy existed between the Wintermanns and the bank.

Her knowledge on May 25, 1951 as to the prior activities of the bank are well summarized in a memorandum of her conversations with the officers of the Federal Reserve Bank and shown by said memorandum (the facts stated therein being now admitted) are, as follows: "More briefly, Mrs. Gruenewaelder's complaints against Mr. Schmidt appeared to be (1) that, by his advice to Mr. Wintermann, he interfered with sale or loan transactions which would have been favorable to her, (2) that (by so eliminating other sources of cash) he put his bank in a dominant position, so as to be able to require such terms as he chose, (3) that he used this circumstance (allegedly in conspiracy with Mr. Wintermann) to force her to sell one-eighth [sic] of her property interest for $5,000 (whereas it was worth $50,000) and that even this inadequate sum has never been paid, (4) that, while agreeing to extend $65,000 to her and Mr. Wintermann jointly (in return for their notes and deed of trust), he made the funds

available to Wintermann's personal account and (5) that such notes and deed of trust were without consideration to make them binding obligations, inasmuch as the only funds involved were actually advanced independently (a) prior to execution of such notes and deed and (b) in favor of Wintermann alone, rather than to him and her jointly."

It clearly appears that appellant's cause of action for fraud accrued when she acquired knowledge of the facts constituting the alleged fraud. The pleaded statute of limitations (Section 516.120) barred a fraud action filed more than five years after the discovery of the fraud. We think the record presented conclusively shows, as a matter of law, that in 1951 plaintiff well knew of all of the alleged fraudulent acts of the defendants of which she now complains and, in fact, she knew of them within two months after the notes and deed of trust in question were executed and the loan transaction completed. Appellant's brief further gives support to respondents' statement that the appellant does not challenge the fact that her cause is governed by the five-year statute of limitations, but seeks to avoid its bar on the theory that she did not discover *the conspiracy* until later and that *all of the damage had not accrued until the foreclosure sale* of the property in 1956 or later.

We find no merit in the mentioned theory. While the *date* when the alleged fraudulent deed of trust was recorded in North Carolina or the *date* when the alleged fraudulent notes were assigned and delivered by the bank to Wintermann do not clearly appear, yet in 1951 plaintiff knew of the alleged fraud and that the bank held, among its assets, the notes and deed of trust which in 1951 she claimed to be fraudulent and void. Clearly, the record shows that in April and May of 1951 appellant had knowledge of the alleged fraud and she had a cause of action for fraud and, had she so elected, could have brought suit to rescind the transaction, cancel the notes, deed and deed of trust and re-

turned what she had obtained by reason of the transaction. She did not do so but, with full knowledge of the facts, she elected to await the outcome and sue for damages. It cannot be claimed that her cause of action would have accrued, if she had sought rescission, but that it did not accrue because she ratified the action and now seeks damages for her loss. She did not elect to rescind, but now seeks damages and her delay and failure to bring the action within five years after obtaining full knowledge of the fraud bars her action under the applicable statute of limitations. See Ludwig v. Scott, Mo.Sup., 65 S.W.2d 1034, 1035; Bockelman v. Home Investment Co., Mo.Sup., 182 S.W.2d 162, 163.

Appellant's final assignment of error is based upon the theory that the last item of damage (sustained by appellant pursuant to the conspiracy of the respondents) was sustained at a time more remote than the five-year statutory period governing actions for conspiracy to defraud, and may be recovered under Section 516.100, and hence her action is not barred by Section 516.120. Appellant argues that "practically speaking, her pecuniary loss did not occur until the foreclosure severed her interests and totally divested her of any interest in or control of the property; (that) not until the foreclosure, therefore, did the last item of damage accrue to the appellant (and that) on that date her action for conspiracy to defraud was complete and, since she filed suit on November 25, 1957, her present action was instituted well within the five-year statute of limitations."

We find no merit in this assignment because appellant, by her pleadings, did *not* controvert the allegations of respondents' amended answer and counterclaim to the effect that defendant Ewald L. Wintermann "was entitled to foreclose on said real estate"; and that the property was "in due course sold at foreclosure to defendant Ewald L. Wintermann." It therefore appears that appellant may not use any loss associated with the foreclosure sale as the last item of damage suffered by reason of the alleged fraud.

We are further of the opinion that Section 516.100 RSMo 1959, V.A.M.S. cannot aid the appellant under the undisputed facts of this case, because of an applicable rule of law well stated in Rippe v. Sutter, supra, 292 S.W.2d 86, 90, as follows: "The general rule, however, is that a statute of limitations begins to run when the cause of action accrues, and that 'accrual' occurs at the time when a breach of duty has occurred or wrong sustained as will give the right to the injured party to bring and maintain an action. The aforequoted statute does not change the general rule that 'when an injury is complete as a legal injury at the time of the act, the period of limitation will at once commence; [and] if the action is of a nature to be maintained without proof of actual damage, the period of limitation will begin to run from the time the act is done without regard to any actual damage, * * * but * * * when the act which gives the cause of action is not legally injurious until certain consequences occur, then the period of limitation will take date from the consequential injury. * * * the injurious consequences or resulting damages which bring about the accrual of the cause of action are the indispensable elements of the injury itself, and not mere aggravating circumstances enhancing a legal injury already inflicted, * * * and * * * the resulting damage is sustained and is capable of ascertainment within the contemplation of the statute whenever it is such that it can be discovered or made known.' Allison v. Missouri Power & Light Co., Mo. App., 59 S.W.2d 771, 773."

Under the admitted facts shown by this record, plaintiff's action was, as a matter of law, barred by the statute of limitations and the court did not err in entering the summary judgment complained of.

The judgment is affirmed.

All concur.